# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MALIK MILLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-466-GMS |
| | ) | |
| DANA METZGER, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

---

Malik Miller. *Pro se* petitioner.

Elizabeth R. McFarlan, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

---

**MEMORANDUM OPINION**

_____, 2017
Wilmington, Delaware

---

[1] Warden Dana Metzger is the current Warden of James T. Vaughn Correctional Center, where Miller is incarcerated. *See* Fed. R. Civ. P. 25(d).


Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Malik X. Miller ("Miller"). (D.I. 1; D.I. 6) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2009, Miller pled guilty to one count of first degree assault. *See Miller v. State*, 47 A.3d 972 (Table), 2012 WL 2580186, at *1 (Del. July 3, 2012). The Delaware Superior Court sentenced him to a total period of twenty-five years at Level V incarceration, suspended after serving three years for twenty-two years at Level IV work release, suspended after serving eight months at work release for twenty-one years and four months at Level IV home confinement, suspended after serving six months for eighteen months at Level III probation. *Id*. Miller did not appeal his conviction or sentence.

In November 2011, Miller was charged with violating his probation after becoming involved in a fight at the Level IV Plummer Center. *See Miller*, 2012 WL 2580186, at *1. Miller admitted the violation at his violation of probation ("VOP') hearing, and the Superior Court sentenced him to six months at Level V incarceration or VOP Center and, upon completion, a restart of the Level IV portion of his original sentence. *Id*. The Delaware Supreme Court affirmed that judgment on appeal. *Id*.

In November 2012, Miller was charged with his second VOP for failing to report to his probation officer and for possessing drugs and a firearm. *See Miller v. State*, 69 A.3d 371 (Table), 2013 WL 3488268, at *1 (Del. July 8, 2013). Following a VOP hearing, the Superior Court found that Miller had violated his probation, and sentenced him to twenty-two years at Level V incarceration, suspended after serving eight years in prison for eighteen months at Level II probation.

*Id.* Miller appealed, and the Delaware Supreme Court affirmed the Superior Court's adjudication of Miller's second VOP and sentence on July 8, 2013. *Id.* at *2.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

2

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To

3

demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly

---

[2]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

4

established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. DISCUSSION

Miller's timely filed amended petition asserts the following nine grounds for relief: (1) his Confrontation Clause rights were violated when a police officer testified about certain statements made by Miller's co-defendant;[3] (2) the second VOP sentence was based on

---

[3]The State describes claim one as alleging that the admission of the officer's testimony deprived Miller of his right to due process, and focuses on the propriety of the admission of hearsay evidence. (D.I. 10 at 7-8) On appeal from his second VOP, Miller appears to have presented

5

insufficient evidence that he possessed drugs and a gun; (3) the long sentence constitutes cruel and unusual punishment; (4) there was insufficient evidence of the aggravating factors to support the sentence; (5) Miller's due process rights were violated because the administrative warrant did not notify him that he was charged with possession of cocaine; (6) Miller's due process rights were violated when the State used evidence that Miller provided a false name when that evidence was not disclosed to Miller prior to the hearing; (7) defense counsel provided ineffective assistance by not challenging the drug evidence on the basis of the evidence problems at the Office of the Chief Medical Examiner ("OCME"); (8) there was insufficient evidence that Miller possessed the drugs because they were not tested; and (9) the lower standard of review used in VOP proceedings provided the State with procedural advantages.

### A. Claims Two and Four: Improper Sentencing Considerations

It is well-established that "[s]tate courts are the ultimate expositors of state law,"[4] and claims based on errors of state law are not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Notably, a "state court's sentencing decision and claims arising from such decision are not constitutionally cognizable unless the sentence exceeds statutory limits or is wholly unauthorized by law." *Siena v. Carroll*, 2005 WL 768487, at *3 (D. Del. Apr. 5, 2005).

In claims two and four, Miller admits he violated his probation by missing his appointment with his probation officer, but he contends the Superior Court improperly

---

claim one as a combined due process (hearsay)/Confrontation Clause argument. Here, however, Miller appears to focus on the Confrontation Clause violation aspect of his argument by asserting that the arresting officer's testimony "violat[ed] the defendant's right to question an adverse witness [because] the co-defendant was never subpoenaed to testify himself." (D.I. 1 at 4; D.I. 6 at 4) Given the way he has presented the argument in this proceeding, the court construes claim one as asserting a Confrontation Clause violation.

[4]*Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

considered "false aggravating factors" and unreliable or insufficient evidence of his drug and gun possession when determining his sentence. Significantly, Miller does not assert that his sentence exceeds the statutory limits. Therefore, the court will deny claims two and four for failing to present a cognizable issue on federal habeas review.

### B. Claim One: Police Officer's Testimony Violated Confrontation Clause Rights

In claim one, Miller argues that his right to question an adverse witness was violated because the Superior Court permitted the testifying officer to repeat statements made by Miller's codefendant without requiring the codefendant to testify himself. Specifically, the officer testified that Miller's co-defendant said Miller was in the front passenger seat of the vehicle before the police arrived. (D.I. 12 at 17) The police officer also testified that the police found drugs in the same car under the passenger seat in which Miller was sitting. (D.I. 12 at 11, 17) On appeal, the Delaware Supreme Court denied claim one as meritless, explaining that Miller's admission "to the charged violation of failing to report to his probation [] alone is sufficient evidence to justify the Superior Court's finding a violation." *Miller*, 2013 WL 3488268, at *1. Given the Delaware Supreme Court's adjudication of this claim, Miller will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 US. 36 (2004) and its progeny, the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant

7

had a prior opportunity for cross-examination. *See Crawford*, 541 US. at 59, 60 n. 9 (2004); *see also Davis v. Washington*, 547 U.S. 813, 823-24 (2006). A testimonial statement is a statement that is made during non-emergency circumstances and is a statement which the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822.

The threshold question in every Confrontation Clause case is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357. If the statement is not testimonial in nature, then the Confrontation Clause has no application. However, even if a statement is testimonial in nature, the "erroneous admission of testimonial hearsay in violation of the Confrontation Clause is simply an error in the trial process itself" that may be affirmed "if the error was harmless." *United States v. Jiminez*, 513 F.3d 62, 78 (3d Cir. 2008). A constitutional error is harmless if the violation did not have a "substantial and injurious effect or influence on the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998). "Under this standard, habeas petitioners [] are not entitled to habeas relief on trial error unless they can establish that it resulted in actual prejudice." *Brecht v. Abramson*, 507 U.S. 619, 638 (1993).

In this case, the court need not determine if the officer's testimony was subject to the Confrontation Clause analysis established in *Crawford*, because that testimony did not result in actual prejudice. The record clearly demonstrates that Miller admitted he missed a probation appointment, and this admission, on its own, provided sufficient evidence for the Superior Court to find that Miller had violated his probation. Accordingly, the court will deny claim one because the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

8

## C. Claim Three: Cruel and Unusual Punishment

In claim three, Miller contends that his sentence constitutes cruel and unusual punishment because it is disproportionate to the admitted offense of missing his appointment with his probation officer. The Delaware Supreme Court denied this claim as meritless, noting that the Superior Court could have sentenced Miller to serve the remaining twenty-one years and six months remaining on his original sentence but, instead, "only imposed an eight-year prison term [] despite Miller's failure to present any evidence in mitigation." *Miller*, 2013 WL at *2. Given this adjudication, Miller will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Eighth Amendment forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 667 (1962). Two decisions of the United States Supreme Court summarize the applicable Eighth Amendment principles for non-capital sentencing: *Lockyer v. Andrade*, 538 U.S. 63 (2003) and *Ewing v. California*, 538 U.S. 11 (2003). In *Lockyer*, the Supreme Court extensively reviewed its prior cases dealing with Eighth Amendment challenges to criminal sentences, and concluded that it has "not established a clear and consistent path for courts to follow [in determining whether a particular sentence for a term of years can violate the Eighth Amendment]." *Lockyer*, 538 U.S. at 72. The *Lockyer* Court explained that, for the purposes of analyzing an Eighth Amendment claim under § 2254(d)(1), the only clearly established governing legal principle is that "the gross disproportionality principle, the precise contours of which are unclear, [is] applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* The *Lockyer* Court then held that a recidivist's minimum sentence of fifty years was not grossly disproportionate to the two counts of petty theft offenses that triggered the application of the recidivist statute. *Id.* at 67, 77.

9

In *Ewing*, the Supreme Court rejected the defendant's claim that a sentence of twenty-five years to life for stealing three golf clubs was "grossly disproportionate" to the crime. *See Ewing*, 538 U.S. at 20, 28. The *Ewing* Court reiterated that the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences,'" *Id.* at 20, which "does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 23. The *Ewing* Court explained that a court engaging in the proportionality analysis must compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offenses and criminal history. *Id.* at 28-29. "In weighing the gravity of [the defendant's] offense, [the court] must place on the scales not only his current felony, but also his long history of felony recidivism." *Ewing*, 538 U.S. at 29.

After reviewing the Delaware Supreme Court's denial of Miller's Eighth Amendment argument within the aforementioned framework, the court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, the "gross proportionality" standard as articulated in *Lockyer* and *Andrade*. In Delaware, once the Superior Court has determined that a probationer violated the terms of his probation, the Superior Court is authorized to re-impose any portion of his previously suspended prison term, giving credit for all time previously served on the sentence at Level V incarceration. *See Gamble v. State*, 728 A.2d 1171, 1172 (Del. 1999). The maximum permissible sentence for a probation violation depends upon the probationer's original sentence and the amount of time previously suspended and served at Level V. *See, e.g.*, 11 Del. C. Ann. § 4334(c)(stating that "[i]f the violation is established, the court may . . . require the probation violator to serve the sentence imposed, or

10

any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed").

Here, Miller's original twenty-five year prison sentence was based on his June 1, 2009 guilty plea to first degree assault as a lesser-included offense of attempted murder after shooting a man in the face. When imposing that sentence, the Superior Court noted that

> [t]his is a lesser included offense of attempted murder as result of a turf war. The defendant is a dangerous young man with little education and few social skills. Probation and Parole must ensure defendant is working or getting his GED and not abroad at night.

(D.I. 12 at 31) Following Miller's second VOP, the Superior Court was authorized to impose a sentence requiring Miller to the serve the entire twenty-two years remaining on his original sentence in prison. The eight year prison term the Superior Court actually imposed for Miller's second VOP was well within the authorized statutory limits. In addition, Miller's second VOP was established by competent evidence, and the non-incarcerative portion (Level IV home confinement) of his first VOP sentence was not effective in preventing him from committing a second violation of his probation.

Thus, after viewing all of these factors together, the court concludes that the second VOP sentence is not so exceedingly rare or extreme to conclude that the sentence is "grossly disproportionate" to Miller's second probation violation. Accordingly, Miller's Eighth Amendment claim does not warrant federal habeas relief under § 2254(d)(1).

### D. Claims Five – Nine: Procedurally Barred

The record reveals that Miller did not present claims five, six, seven, eight, and nine to the Delaware Supreme Court when he appealed his second VOP or in a post-conviction motion

11

relating to his second VOP.[5] Any attempt to raise the arguments in a new Rule 61 motion would be denied as time-barred under Rule 61(i)(1). Therefore, claims five through nine are procedurally defaulted, which means that the court cannot review their merits unless Miller demonstrates cause and prejudice, or that a miscarriage of justice will result from the absence of review.

Miller does not assert any cause or prejudice for his default of claims five, six, eight, or nine. He does, however, attempt to establish cause for his default of claim seven by referencing the "newly discovered evidence" of the evidentiary "chain of custody" problems at the OCME, and by blaming defense counsel for failing to challenge the propriety of admitting the drugs seized in his case due to the OCME scandal. This attempt is unavailing. The evidentiary problems at the OCME were not revealed until February, 2014, more than one full year after the

---

[5]In his reply to the State's answer, Miller contends that he actually did present claims five, six, eight and nine to the Delaware Supreme Court on appeal from his second VOP:

> Although not in the same form or fashion as in the direct appeal, [I have] always touched on the same topic. Grounds E [5], F [6], H [8], and I [9]. All challenge the sufficient [sic] of the State's evidence, just in a more technical way. The facts still remain that [I] was deprived unconstitutionally of notice of the nature of the charge against [me] and of the evidence to be presented against [me].

(D.I. 13 at 2) The court disagrees with Miller's description of the arguments he presented to the Delaware Supreme Court as questioning the sufficiency of the possession evidence. Nevertheless, even if the court were to liberally construe the arguments Miller presented to the Delaware Supreme Court on appeal of his second VOP as presenting the same arguments contained in claims five, six, eight and nine of this proceeding, the court would deny the claims for failing to satisfy § 2254(d). Claims five, six, eight, and nine of this proceeding challenge the sufficiency of the evidence regarding Miller's possession of drugs and a gun. Pursuant to *Jackson v. Virginia*, 443 U.S. 307 (1979), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Since the Superior Court also found that Miller had violated his probation by failing to keep his appointment with his probation officer, Miller's argument that there was insufficient evidence of drug and weapon possession to support his second VOP conviction does not satisfy the *Jackson* standard.

12

conclusion of Miller's January 16, 2013 second VOP hearing. Given this timing, defense counsel could not have challenged the drugs seized in Miller's case on the basis of the still-yet-to-be discovered OCME evidence problems. Additionally, nothing in the record indicates that the drugs in Miller's case were actually sent to or tested by the OCME. For these reasons, the OCME evidence problems and defense counsel's actions in relation to this issue do not constitute cause for Miller's procedural default of claim seven.

In the absence of cause, the court will not address the issue of prejudice with respect to claim seven. Moreover, the miscarriage of justice exception to the procedural default doctrine cannot excuse Miller's default of claims five through nine, because he has not provided new reliable evidence of his actual innocence. Thus, the court will deny claims five, six, seven, eight, and nine as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Miller's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Miller's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.